FILED
97 MAR 31 PM 4: 25
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| PERRY L. BYRD, | } | |
| Plaintiff, | } | |
| v. | } | CASE NO. CV 95-B-0218-NW |
| TENNESSEE VALLEY AUTHORITY, NATIONAL PSYCHOPHARMACOLOGY LABORATORY, INC., | } | |
| Defendant. | } | |

ENTERED
MAR 3 1 1997

## MEMORANDUM OPINION

This matter is before the court on the summary judgment motion of National Psychopharmacology Laboratory, Inc. ("NPL" or "defendant"). Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that defendant's motion is due to be granted.

### FACTUAL SUMMARY

Plaintiff Perry L. Byrd ("Byrd" or "plaintiff") was formerly employed as a Shift Supervisor PG-5 by the Tennessee Valley Authority ("TVA") at its Browns Ferry Nuclear Plant. (Compl. at ¶ 10). According to plaintiff, on or near June 20, 1994, he was subjected to a random drug test while at work under TVA's Fitness for Duty program. (Compl. ¶ 16). After plaintiff provided his urine sample, a trained TVA laboratory technician noted that: (1) plaintiff did not behave unusually in providing the urine sample; (2) the color of the specimen appeared to be the color expected of urine; (3) the temperature of the specimen was within the

prescribed temperature limits established for bodily fluids; and (4) there was nothing unusual or abnormal about either plaintiff's conduct or plaintiff's urine sample. (Compl. ¶¶ 17, 18).

On or near June 22, 1994, TVA's contractor, NPL, performed a urine drug screen on a urine sample alleged to belong to plaintiff. (Compl. ¶ 22). The test results were negative for the following drugs: (1) amphetamines; (2) marijuana metabolites; (3) cocaine metabolite; (3) opiates; and (4) phencyclidine, (PCP). (Compl. ¶ 23, Ex. 1). Plaintiff contends that NPL also performed an unauthorized test for specific gravity and, based upon its findings, reported to TVA that plaintiff had provided an adulterated urine sample and that the sample was not urine; rather, it was pure water. (Compl. ¶¶ 24-25).

Consequently, TVA elected to have plaintiff provide a second observed urine sample which required plaintiff to provide a urine specimen under direct observation. (Compl. ¶ 26). On or near June 23, 1994, and while under observation, plaintiff provided a second urine specimen to a TVA laboratory technician. (Compl. ¶ 27). Plaintiff had no further contact with the specimen after releasing it to the custody of the TVA technician. (Compl. ¶ 28). NPL obtained custody of a specimen alleged to belong to plaintiff and conducted several urine drug screening tests on the sample on or near June 25, 1994. (Compl. ¶29). The tests performed by NPL were negative for the presence of all the following drugs: (1) amphetamines; (2) barbiturates; (3) benzodiazepines; (4) marijuana metabolites; (5) cocaine metabolite; (6) methadone; (7) methaqualone; (8) opiates; (9) phencyclidine, (PCP); (10) LSD; and (11) propoxyphene. (Compl. ¶ 30; Compl. at Ex. 2).

On or around July 27, 1994, TVA terminated plaintiff for allegedly providing a non-urine sample on June 20, 1994. (July 7, 1994 Notice of Termination attached to TVA's Motion to Dismiss).

On January 24, 1995, plaintiff filed suit in this court against TVA and NPL. On March 29, 1996, the court entered a memorandum opinion and order granting TVA's motion to dismiss. As a result, the only remaining defendant is NPL. Because both parties have briefed and argued the issues raised in defendant's motion for summary judgment, this matter is now ripe for decision.

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED.R.CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

In his complaint, plaintiff alleges that "the wrongful actions of NPL by and through its employees constituted negligence in their duty to adequately test and report on the urine sample." (Compl. at ¶ 51). In addition, plaintiff contends that "the wrongful actions of NPL, by and through its employees constituted wanton acts injuring plaintiff."[1] (Compl. at ¶ 52).

---

[1] Plaintiff's complaint also alleged that the "wrongful actions of NPL by and through its employees constituted slander." (Compl. at ¶ 50). As defendant points out, however, at a hearing before the court on December 5, 1996, plaintiff conceded that there exists no evidentiary basis for his slander/defamation claim. As a result of plaintiff's concession, and because summary

4

With respect to plaintiff's negligence claim, "[i]n order to prove a claim of negligence, a plaintiff must establish a breach of a duty owed by the defendant to the plaintiff and . . . that the breach proximately caused damage to the plaintiff." *Bowden v. E. Ray Watson Co., Inc.*, 587 So. 2d 944, 946 (Ala. 1991) (citation omitted). Although the court was unable to locate a case discussing the issue of whether a duty is owed under the circumstances presented in the instant case, the court will assume without deciding, that NPL owed a duty of reasonable care to Byrd.

Plaintiff alleges that NPL "made mistakes and errors in its handling of the drug test and urine specimen, and inaccurately concluded that it was water."[2] (Pl.'s Mem. in Opp'n to Summ. J. at 3). In support of its summary judgment motion, defendant maintains that no evidence exists that NPL acted negligently in testing Byrd's urine sample. Specifically, defendant states: "Plaintiff has offered no evidence that these tests were performed in a negligent or wanton manner other than to assert that they were 'wrong.'" (Def.s Mot. for Summ. J. and Mem. Br. in Supp. at 10). To support its position on this issue, NPL offers, inter alia, the affidavit of the director of the NPL, Clint R. Crooks, Ph.D. ("Crooks"). In his

---

judgment standards warrant it, the court is of the opinion that plaintiff's slander/defamation claim is due to be dismissed without discussion.

[2] It is noteworthy that the only evidence plaintiff has produced to support its statement that NPL concluded that the specimen at issue was water is a memo in which A. Estes Felker, M.D., noted: "Dr. Tim Robert, the forensic toxicologist [at NPL], stated that the specimen had the appearance as well as the chemical and physical properties of water. He further stated findings were incompatible with human urine." (Ex. 5 to Ralph Thompson Dep.) Despite the problem that plaintiff would encounter with FED. R. EVID. 802 and 805 if he attempted to introduce this memo, the court notes that in the above statement, Roberts does not conclude that plaintiff submitted water in lieu of a urine sample; he merely concludes that the submitted specimen had properties that were consistent with water.

5

affidavit, Crooks states: "These tests were and are conducted in a manner generally accepted by the scientific community for these tests. The test results obtained were reliable. Furthermore, the tests were performed in accordance with the specifications required by the agreement between NPL and TVA." (Crooks Aff. at 2).

In addition to the affidavit of Crooks, defendant submits the affidavit of its retained expert, Dr. Alphonse Poklis ("Poklis"). In his affidavit, Poklis states that he reviewed NPL's testing procedures, is familiar with its testing methods, and reviewed the test results from the specimen given by Byrd that is the subject of this litigation. (Poklis Aff. at 1). After discussing the specific testing methods used by NPL, Poklis stated:

> I have seen nothing in my review of materials in this matter to indicate that the test results given on . . . Byrd's urine, specifically, a creatinine result of 0.00 and a specific gravity result of 1.000, are incorrect. To the contrary, my review of relative materials, as well as my experience and training, indicate that Mr. Byrd's test results, performed in scientifically accepted methods, are correct.

(Poklis Aff. at 2).

In opposition to NPL's motion for summary judgment Byrd filed, inter alia, the "Rule 26(a)(2)(B) Report of Vickie Watts, M.S." ("Watts Report"). On March 28, 1997, NPL filed a motion to strike the Watts Report, alleging that under FED. R. CIV. P. 56(c), the non-moving party is required to submit pleadings, depositions, answers to interrogatories, admissions on file, and affidavits in order to rebut a motion for summary judgment. Thus, because the Watts Report does not comply with the applicable rules, the court should not consider it. Although the court is of the opinion that the Watts Report is due to be stricken, the court declines to do so, and, instead, discusses the substance of the report.

6

In her Rule 26 report, Watts opines that: (1) "The testing laboratory failed to properly maintain and secure the urine sample for Perry Byrd which was suspected of being substituted;" (2) "[t]he testing laboratory was incorrect in concluding that Perry Byrd had failed to provide a urine sample;" (3) "[t]he testing laboratory was incorrect in concluding that Perry Byrd had provided a substituted urine sample;" (4) "[t]he testing laboratory was incorrect in stating that the urine sample submitted by Perry Byrd failed to contain human urine;" (5) "[t]he testing laboratory failed to follow appropriate program guidelines and laboratory certification requirements for urine sample storage and preservation." (Rule 26(a)(2)(B) Report of Vickie Watts, M.S. at 3.)

Despite the fact that Watts provides little, if any, factual basis upon which she rests her opinions, even if the court accepts all of her opinions as true, as defendant points out, nowhere in her report does Ms. Watts ever say that the specific gravity result of 1.000 and the creatinine result of 0.00 are incorrect or that these results were reached in a negligent or wanton fashion by NPL. Moreover, with one exception, none of Watts' conclusions raise the slightest challenge to the manner in which the results were obtained, one of the primary issues in this litigation. Although Watts' report does attempt to question NPL's ability to appropriately measure the creatinine level of urine, she has produced nothing other than conclusory allegations to buttress her conclusion regarding this issue. Thus, because a plaintiff faced with a summary judgment motion is required to produce evidence upon which a reasonable jury could find in the plaintiff's favor, and because defendant offers no evidence

that raises a genuine issue of material fact on the issue of whether defendant acted negligently, the court concludes that plaintiff has failed to satisfy his summary judgment burden.[3]

Having found that plaintiff has failed to present substantial evidence regarding whether NPL breached its duty, the court need not discuss the issue of proximate cause. The court will, however, discuss this issue briefly. According to plaintiff, the normal range for specific gravity is 1.005 to 1.030, and the normal range for creatinine is 20.00 to 120.00 mg/dl. (Pl.'s Mem. in Opp'n to Summ. J. at 19). When NPL tested plaintiff's June 20, 1994 urine sample, the results revealed a specific gravity level of 1.000 and creatinine level of 0.00 mg/dl. (*Id.*) Plaintiff concedes that these levels are outside the "normal range," but argues that they are consistent "with the metabolic and human urinary conditions present with Plaintiff Perry Byrd." (*Id.*) Plaintiff contends that on April 2, 1992, he had an unobserved urine drug test that produced a specific gravity of 1.000 and a creatinine of 0.05 mg/dl. (*Id.* at 18). Although plaintiff offers the substantially similar test results of June 20, 1994 and April 2, 1992 as support for his position that summary judgment should be denied, in the court's view, these similar results not only provide further support for defendant's contention that the results from the June 20, 1994 sample were accurate, but they also significantly undermine plaintiff's proximate cause argument. Thus, based on this and other evidence of record, the court concludes that plaintiff has failed to present substantial evidence as to proximate cause.[4]

---

[3] Because the court concludes that plaintiff has failed to satisfy his summary judgment burden with respect to his negligence claim, there is no need to discuss plaintiff's wantonness claim, except to state that summary judgment is due to be granted on this claim as well.

[4] In support of his argument that NPL negligently destroyed his urine sample, plaintiff offers, inter alia, the affidavit of John Benn, who was counsel for plaintiff through August 28, 1996. Although the affidavit of John Benn, is due to be stricken because the allegations within it

## CONCLUSION

Based upon the foregoing analysis, the court holds that there is no genuine issue as to any material fact and defendant is entitled to a judgment as a matter of law. An order granting defendant's Motion for Summary Judgment shall be entered contemporaneously herewith.

DONE this 31st day of March, 1997.

SHARON LOVELACE BLACKBURN
United States District Judge

---

are not "of a kind admissible at trial," *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921 n. 2 (7th Cir. 1994), the court declines to strike Benn's affidavit. However, after reviewing plaintiff's claim that NPL was negligent in destroying the June 20, 1994 sample, the court concludes that this claim is also due to be dismissed; plaintiff has failed to present substantial evidence that NPL breached a duty in destroying the sample, or that its destruction resulted in plaintiff's termination.

9